UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
KIM FOBBS,

                Plaintiff,                15-cv-6736 (PKC)

    -against-                MEMORANDUM
                                        AND ORDER

THE CITY OF NEW YORK, and NEW YORK
CITY POLICE DEPARTMENT,

                Defendants.
------------------------------------------------------------x

CASTEL, U.S.D.J.

        Plaintiff Kim Fobbs brings this action against the City of New York ("City") and the New York City Police Department ("NYPD"), asserting claims under 42 U.S.C. § 1983. Fobbs's complaint alleges violations of her right to a speedy trial, malicious prosecution, infliction of extreme emotional distress, harassment, and municipal liability. Fact discovery in this action has concluded. Defendants now move for summary judgment on all claims. For the following reasons defendants' motion is GRANTED.

BACKGROUND

        The following facts are taken from materials submitted in connection with the present motion and are either undisputed or construed "in the light most favorable to the [plaintiff]." Costello v. City of Burlington, 632 F.3d 41, 45 (2d Cir. 2011). Fobbs, who is represented by counsel, has not submitted a Rule 56.1 statement and in fact, appears to have copied the text of the defendants' Rule 56.1 statement into the fact section of her opposition brief. The Court accepts the facts set forth in defendants' unchallenged statement to the extent

they are supported by the record. See Giannullo v. City of New York, 322 F.3d 139, 140 (2d Cir. 2003) (citing Holtz v. Rockefeller & Co., 258 F.3d 62, 74 (2d Cir. 2001)).

Fobbs was arrested by the NYPD on March 24, 2011 on charges of grand larceny and offering a false instrument for filing in connection with her receipt of Section 8 housing benefits from the New York City Housing Authority ("NYCHA").[1] (Johnson Decl. Ex. G; Criminal Complaint, Johnson Decl. Ex. C). The criminal complaint, sworn out by NYCHA Special Investigator Beth-Ann Permuy, accused Fobbs of failing to report her husband's income on her applications for Section 8 housing vouchers. (Johnson Decl. Ex. C). Fobbs and her husband William Adams were married on May 4, 1992. (Defs.' 56.1 ¶ 2; Johnson Decl. Ex. C). Fobbs began receiving Section 8 housing vouchers in 1996. (Defs.' 56.1 ¶ 1). Using the vouchers, Fobbs rented an apartment located at 370 East 173rd Street in the Bronx. (Id. ¶ 4). Later, she moved to 4005 Dereimer Avenue in the Bronx. (Id. ¶ 5). Fobbs's rent at 4005 Dereimer Avenue was subsidized by the Section 8 program from 2000 to 2009. (Id. ¶ 6).

The amount of the subsidy Fobbs received was determined by the number of people in her household as well as each person's employment status and income level. (Id. ¶ 7). In "Affidavits of Income" filed with NYCHA on March 24, 2006, April 12, 2007, April 18, 2008, and February 24, 2009, Fobbs reported that she lived only with her children and grandchildren. (Id. ¶ 18). She did not report living with her husband and did not include his income on her "Affidavits of Income." (Id. ¶¶ 17-18). However, her husband, Adams, listed 4005 Dereimer Avenue as his residence on a New York state driver's license issued in 2004, and on a commercial driver learner's permit issued to him in 2005. (Id. ¶¶ 14-15). Permuy's

---

[1] The record is unclear as to the exact date of Fobbs's arrest. (Compare NYPD Arrest Report, Johnson Decl. Ex. G (listing date of arrest as March 24, 2011), with Compl. ¶ 6 (claiming arrest took place on March 23, 2011), and Defendants' Rule 56.1 Statement ("Defs.' 56.1") ¶ 26 (stating arrest took place March 26, 2011)). However, this discrepancy is immaterial to the Court's summary judgment analysis.

investigation also revealed that Adams had worked full-time as a New York City bus driver since approximately 2004 where he listed 4005 Dereimer Avenue as his home address. (Id. ¶ 8; Johnson Decl. Ex. C). In addition, W-2 forms issued by the Metropolitan Transit Authority ("MTA") between 2005 and 2008 listed his residence as 4005 Dereimer Avenue. (Defs.' 56.1 ¶ 11). During that time he earned in excess of $191,000, which was not included in any of the "Affidavits of Income" Fobbs filed with NYCHA. (Id. ¶¶ 18, 23).

Based on this information, Permuy swore out a criminal complaint on March 24, 2011 charging Fobbs with grand larceny and offering a false instrument for filing. (Id. ¶ 22). The criminal complaint states that Fobbs would not have been eligible to receive Section 8 housing vouchers if she had reported her husband's income. (Johnson Decl. Ex. C). As a result of her failure to report her husband's income and presence in the apartment, NYCHA overpaid Fobbs in excess of $36,504 between 2006 and 2009. (Defs.' 56.1 ¶ 24). NYPD officers arrested Fobbs in Dutchess County on March 24, 2011. (Id. ¶ 26; Johnson Decl. Ex. G). These charges were ultimately dismissed on March 19, 2015 upon a motion under New York Criminal Procedure Law ("C.P.L.") § 30.30. (Id. ¶ 29). C.P.L. § 30.30 requires that the state prosecutor be ready for trial within a prescribed period of time depending on the nature of the offenses charged. N.Y. CRIM. PROC. LAW § 30.30. According to Fobbs, the Assistant District Attorneys misrepresented their trial readiness to the court and failed to present witnesses in a timely manner and were therefore unable to move forward with the case. (Compl. ¶ 14; Pl.'s Mem. 10).

During her deposition in this action, Fobbs testified that she and her husband did not live together between 1995 and 2009, and that he lived at his father's house during that time. (Fobbs Deposition, Johnson Decl. Ex. B 15:16-25, 16:10-12). She also explained that Adams only used the 4005 Dereimer address on his driver's license and other official documents so that

he could claim head of household status on his tax returns, as he could not do so using his father's address. (Id. 29:14-24).

DISCUSSION

I.    Legal Standard.

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a), Fed. R. Civ. P. A fact is material if it "might affect the outcome of the suit under the governing law . . . ." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). It is the initial burden of a movant on a summary judgment motion to come forward with evidence on each material element of his claim or defense, demonstrating that he is entitled to relief as a matter of law. Vt. Teddy Bear Co., Inc. v. 1–800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004).

When the moving party has met this initial burden and has asserted facts demonstrating that the non-moving party's claim cannot be sustained, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250. In raising a triable issue of fact, the non-movant carries only a "limited burden of production," but nevertheless "must demonstrate more than some metaphysical doubt as to the material facts, and come forward with specific facts showing that there is a genuine issue for trial." Powell v. Nat'l Bd. of Med. Exam'rs, 364 F.3d 79, 84 (2d Cir. 2004) (internal quotation marks omitted).

An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. The Court must "view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor, and may grant summary judgment only when no reasonable trier of fact

could find in favor of the nonmoving party." Allen v. Coughlin, 64 F.3d 77, 79 (2d Cir. 1995) (internal quotations and citations omitted). In reviewing a motion for summary judgment, the Court must scrutinize the record, and grant or deny summary judgment as the record warrants. Rule 56(c), Fed. R. Civ. P. In the absence of any disputed material fact, summary judgment is appropriate.

II. Claims Against the NYPD.

The NYPD is not a juridical entity separate from the City of New York. It is a non-suable agency of the City. See N.Y. City Charter § 396 ("All actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of city of New York and not in that of any agency, except where otherwise provided by law."). Fobbs's claims against the NYPD must be dismissed. See Jenkins v. City of New York, 478 F.3d 76, 93 n.19 (2d Cir. 2007) (approving the district court's conclusion that the NYPD is non-suable agency of the City).

III. Section 1983 Claims.

To establish a claim under 42 U.S.C. § 1983, a plaintiff must prove that "(1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States." Snider v. Dylag, 188 F.3d 51, 53 (2d Cir. 1999). In this case, Fobbs claims that she was: (a) deprived of her rights to a speedy trial, (b) maliciously prosecuted, (c) subjected to extreme emotional distress, and (d) subjected to a conspiracy to harass her. Fobbs also claims that the City is liable for the alleged constitutional violations she suffered. See Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 696 (1978).

A. Speedy Trial.

The Sixth Amendment guarantees criminal defendants "the right to a speedy . . . trial." The right attaches upon either a formal indictment or information or upon the imposition of "the actual restraints imposed by arrest and holding to answer a criminal charge." United States v. Marion, 404 U.S. 307, 320 (1971). Fobbs appears to base her Sixth Amendment claim on the failure of the District Attorney for Bronx County to present and disclose witnesses in a timely manner leading to multiple adjournments of the trial date and ultimately dismissal of the charges pursuant to C.P.L. § 30.30. However, the limitations of C.P.L. § 30.30 are a state statutory standard, and therefore, a violation of section 30.30 is not in itself a violation of the Constitution or federal law, an element of a section 1983 claim. See Jackson v. Marshall, No. 04 Civ. 3915 (WHP), 2008 WL 800745, at *4 (S.D.N.Y. Mar. 25, 2008) (because the limitations of section 30.30 are statutory, not constitutional, "a violation of § 30.30 cannot be the basis of a § 1983 claim"); Gibriano v. Att'y Gen. of State of New York, 965 F. Supp. 489, 491–92 (S.D.N.Y. 1997) (noting, in the context of a habeas corpus action, "Section 30.30 is a statutory time in which the People of New York must be ready for trial; Section 30.30 is not, as such, a statutory embodiment of the constitutional guarantee to a speedy trial."). Rather, the court must determine whether Fobbs has been deprived of her constitutional rights to a speedy trial.

Whether an accused's constitutional right to a speedy trial has been violated is a fact-specific inquiry, which "necessarily compels courts to approach speedy trial cases on an ad hoc basis." Barker v. Wingo, 407 U.S. 514, 530 (1972). In Barker, the Supreme Court identified four factors relevant to a claim under the Speedy Trial Clause: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's demand for a speedy trial, and (4) prejudice to the

defendant.  Id.  No single factor is dispositive to the finding of a speedy trial violation, however, and "courts must still engage in a difficult and sensitive balancing process."  Id. at 533.

It appears that Fobbs contends that the District Attorney for Bronx County is responsible for violating her right to a speedy trial.  However, the only remaining defendant in this action is the City of New York, and when making a specific decision to prosecute, assistant district attorneys are not City actors.  See, e.g., Claudio v. City of New York, 423 F. Supp. 2d 170, 172 (S.D.N.Y. 2006) (alleged misconduct by assistant district attorneys cannot give rise to municipal liability under section 1983 because assistant district attorneys are state actors); Baez v. Hennessy, 853 F.2d 73, 77 (2d Cir. 1988) ("When prosecuting a criminal matter, a district attorney in New York State, acting in a quasi-judicial capacity, represents the State not the county"); Brown v. City of New York, 60 N.Y.2d 897, 898-99 (1983) (noting that for the purposes of issue preclusion, the City of New York and the District Attorney "are separate entities").  Therefore, any claims of misconduct by prosecutors in the Bronx County District Attorney's office cannot give rise to municipal liability against Defendant City of New York.

Moreover, even if Fobbs had named prosecutors from the Bronx County District Attorney's office in her complaint, these individuals would be entitled to immunity.  Prosecutors enjoy absolute immunity from civil liability for actions taken within the scope of their duty to initiate and pursue a prosecution.  See Day v. Morgenthau, 909 F.2d 75, 77 (2d Cir. 1990) (quoting Imbler v. Pachtman, 424 U.S. 409, 410 (1976)); Shmueli v. City of New York, 424 F.3d 231, 236 (2d Cir. 2005) ("It is by now well established that a state prosecuting attorney who acted within the scope of his duties in initiating and pursuing a criminal prosecution . . . is immune from a civil suit for damages under § 1983.") (internal citations and quotation marks omitted).  The decision to seek an adjournment so as to procure the availability of an important

trial witness is part of a prosecutor's traditional function and within the scope of his duty to pursue a prosecution. Therefore, it is not an action for which an assistant district attorney can be held civilly liable under section 1983.

Accordingly, defendants' motion for summary judgment is granted as to Fobbs's speedy trial claims.

B. Malicious Prosecution.

"In order to prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment . . . and establish the elements of a malicious prosecution claim under state law." Fulton v. Robinson, 289 F.3d 188, 195 (2d Cir. 2002) (internal citations omitted). "To establish a malicious prosecution claim under New York law, a plaintiff must prove '(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions.'" Manganiello v. City of New York, 612 F.3d 149, 161 (2d Cir. 2010) (quoting Murphy v. Lynn, 118 F.3d 938, 947 (2d Cir. 1997)). Under section 1983, the plaintiff must also show "that there was . . . a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights." Rohman v. New York City Transit Auth., 215 F.3d 208, 215 (2d Cir. 2000).

Defendants move for summary judgment on Fobbs's malicious prosecution claim on the basis that there was probable cause to prosecute her. "[T]he existence of probable cause is a complete defense to a claim of malicious prosecution in New York." Manganiello, 612 F.3d at 161-62 (quoting Savino v. City of New York, 331 F.3d 63, 72 (2d Cir. 2003)). Plaintiff bears the burden of plausibly alleging all of the elements of a malicious prosecution claim, including that

there was a "lack of probable cause for commencing the proceeding." Id. at 161; see Broughton v. State, 37 N.Y.2d 451, 457 (1975) ("Where the plaintiff institutes a malicious prosecution action he must plead the lack of probable cause.").

Although probable cause to arrest and probable cause to prosecute are distinct, see Posr v. Court Officer Shield No. 207, 180 F.3d 409, 417 (2d Cir. 1999), "a malicious prosecution claim will be defeated by a finding of probable cause to arrest, unless the plaintiff can demonstrate mitigating facts to vitiate probable cause which were first uncovered after the arrest." Carson v. Lewis, 35 F. Supp. 2d 250, 263 (E.D.N.Y. 1999); see Gaston v. City of New York, 851 F. Supp. 2d 780, 793 (S.D.N.Y. 2012) ("Where . . . probable cause existed for the arrest itself, a plaintiff pursuing a malicious prosecution claim must establish that probable cause somehow 'dissipated' between the time of arrest and the commencement of the prosecution.") (citation omitted); Keith v. City of New York., 641 F. App'x 63, 67–68 (2d Cir. 2016) (summary order) (earlier finding that the officers had arguable probable cause to arrest plaintiff entitled defendants to qualified immunity on malicious prosecution claim unless plaintiff could identify some fact that came to the attention of the police after the arrest but before the prosecution had been initiated that was sufficient to "dissipate" the probable cause at the time of the arrest).

"The question of whether or not probable cause [to arrest] existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers." Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996). There is probable cause to arrest "when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." Id. A court "must examine the totality of the circumstances of a given arrest" and judge those circumstances "from the

perspective of a reasonable police officer in light of his training and experience." United States v. Delossantos, 536 F.3d 155, 159 (2d Cir. 2008).

As will be shown, the undisputed facts show that there was probable cause to arrest Fobbs for violations of N.Y. Penal Law § 155.35 (grand larceny), and § 175.35 (offering a false instrument for filing) based on the results of Permuy's investigation. Under New York law, "[a] person is guilty of grand larceny in the third degree when he or she steals property" valued at more than three thousand dollars. N.Y. PENAL LAW § 155.35. Permuy's investigation revealed that Fobbs received Section 8 housing vouchers for 4005 Dereimer Avenue between 2006 and 2009. (Defs.' 56.1 ¶ 6). These rental subsidies were determined based on "Affidavits of Income" submitted by Fobbs stating that she lived only with her children and grandchildren. (Id. ¶¶ 7, 18). However, Fobbs's husband, William Adams, listed 4005 Dereimer Avenue as his residence on W-2 forms and multiple driver's licenses during the relevant period of time. (Id. ¶¶ 11, 14-15). Permuy's investigation also revealed that Adams had worked for the MTA as a full-time bus driver since 2004 and had earned in excess of $191,000 between 2005 and 2008. (Id. ¶¶ 8, 23). Had Fobbs reported this income, she would not have been eligible for the Section 8 housing benefits she received between 2006 and 2009. (Id. ¶ 25). Permuy calculated the value of the housing vouchers Fobbs inappropriately received at $36,504. (Id. ¶ 24). Considering the information available to Permuy, it was reasonable for her to conclude that Adams resided with Fobbs at 4005 Dereimer Avenue and that Fobbs had deliberately concealed her husband's income from NYCHA so as to qualify for rental subsidies she was not entitled to receive. Thus, Permuy had probable cause to believe that Fobbs had committed grand larceny in the third degree by stealing over $3,000 in housing vouchers from NYCHA.

There was also probable cause to arrest Fobbs for offering a false instrument for filing in violation of N.Y. Penal Law § 175.35.  "A person is guilty of offering a false instrument for filing in the first degree when . . . knowing that a written instrument contains a false statement or false information, and with intent to defraud the state or any political subdivision, public authority or public benefit corporation of the state, he or she offers or presents it to a public office, public servant, public authority or public benefit corporation with the knowledge or belief that it will be filed with, registered or recorded in or otherwise become a part of the records of such public office, public servant, public authority or public benefit corporation."  N.Y. PENAL LAW § 175.35.

The "Affidavits of Income" Fobbs filed with NYCHA, a public benefit corporation, N.Y. PUB. HOUS. LAW § 401; Dingle v. City of New York, 728 F. Supp. 2d 332, 340 n.150 (S.D.N.Y. 2010) ("It is well settled that the NYCHA is a public corporation."), qualify as "written instruments" under the statute.  New York Penal Law § 175.00 defines a "written instrument" as "any instrument or article, . . . containing written or printed matter or the equivalent thereof, used for the purpose of reciting, embodying, conveying or recording information, or constituting a symbol or evidence of value, right, privilege or identification, which is capable of being used to the advantage or disadvantage of some person."  N.Y. PENAL LAW § 175.00.  Fobbs's "Affidavits of Income" contained written or printed matter, were used to convey information to NYCHA, and were capable of being used to Fobbs's advantage as they determined her eligibility for Section 8 housing benefits.  In addition, as was previously discussed, Permuy's investigation revealed evidence establishing probable cause to believe that Fobbs had intentionally omitted Adams's income from her "Affidavits of Income" so as to

- 11 -

receive Section 8 rental subsidies.  Therefore, probable cause existed to arrest Fobbs for offering a false instrument for filing in violation of New York Penal Law § 175.35.

Finally, it was reasonable for the arresting officers from the NYPD to rely on the information gathered by Permuy in making the arrest. Under the collective knowledge doctrine or fellow officer rule, "an arrest . . . is permissible where the actual arresting . . . officer lacks the specific information to form the basis for probable cause . . . but sufficient information to justify the arrest . . . was known by other law enforcement officials initiating or involved with the investigation." United States v. Colon, 250 F.3d 130, 135 (2d Cir. 2001). The critical inquiry is whether the "other" law enforcement officer transmitting the information to the arresting officers possessed information that amounted to probable cause. See id. at 136 ("application of the imputed knowledge doctrine requires that at some point along the line, some law enforcement official . . . involved must possess sufficient information to permit the conclusion that a[n] . . . arrest is justified."); Mendoza v. City of Rome, 872 F. Supp. 1110, 1116 (N.D.N.Y. 1994) (noting that if a warrantless arrest is challenged, "the government has the burden 'to establish that the officer or agency imparting the information *in fact* possessed the probable cause to act.'") (quoting People v. Rosario, 78 N.Y.2d 583, 588 (1991)). As discussed above, the information available to Permuy established probable cause to believe Fobbs had committed grand larceny in the third degree and offered a false instrument for filing. Therefore, the NYPD was entitled to rely on this information in arresting Fobbs on both offenses.

"In order for probable cause to dissipate, the groundless nature of the charges must be made apparent by the discovery of some intervening fact." Lowth v. Town of Cheektowaga, 82 F.3d 563, 571 (2d Cir. 1996). Fobbs fails to establish the existence of evidence uncovered after her arrest that successfully vitiates this probable cause. Even assuming the

prosecutors were aware of her claim that her husband did not live with her between 2006 and 2009, that assertion alone is not enough to defeat the defendants' showing of probable cause. Fobbs also cites the fact that her case was never presented to a grand jury as evidence of a lack of probable cause to prosecute her. However, "the prosecutors' failure to seek a grand jury indictment does not serve as evidence against a finding that probable cause existed to arrest and prosecute Plaintiff; the lack of an indictment merely obligates Defendants to prove the existence of probable cause as an affirmative defense to Plaintiff's claims of false arrest and malicious prosecution." Drummond v. Castro, 522 F. Supp. 2d 667, 678 (S.D.N.Y. 2007) (citing Broughton, 37 N.Y.2d at 458). Here, defendants have met this burden and have established that probable cause existed to arrest and prosecute Fobbs.

Fobbs has also failed to present evidence of malice. "Under New York law, malice does not have to be actual spite or hatred, but only a showing 'that the defendant must have commenced the criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served.'" Lowth, 82 F.3d at 573 (quoting Nardelli v. Stamberg, 44 N.Y.2d 500, 502-03 (1978)). A lack of probable cause to prosecute "generally creates an inference of malice." Boyd v. City of New York, 336 F.3d 72, 78 (2d Cir. 2003). Fobbs points to no evidence of any improper motive on the part of any individual involved in her prosecution. Her claims that the prosecutor misrepresented his or her readiness for trial, refused to stipulate to the entrance of certain records, and refusal to orally concede a violation of C.P.L § 30.30 do not constitute evidence of malice. As there was probable cause to prosecute Fobbs and she has failed to establish malice on the part of any of the individuals involved in her criminal case, Fobbs's malicious prosecution claim is dismissed.

C. Inflication of Extreme Emotional Distress.

In the introduction to Fobbs's complaint she asserts a claim for "[i]nfliction of extreme emotional distress" under 42 U.S.C. § 1983. (Compl. 1). However, this is the first and only time such a claim is mentioned in the complaint, nor does Fobbs address the issue in her opposition to defendants' motion for summary judgment. Fobbs has failed to come forward with evidence that would preclude summary judgment on this claim, see Anderson, 477 U.S. at 250 (to survive a motion for summary judgment the non-movant "must set forth specific facts showing that there is a genuine issue for trial."), and in any event, the complaint itself fails to state a plausible claim for relief as it is entirely devoid of any factual support for a claim of intentional or negligent infliction of emotional distress. Defendants' motion for summary judgment is granted as to Fobbs's claim for infliction of extreme emotional distress.

D. Section 1983 Conspiracy.

Fobbs alleges that the police officers and prosecutors involved in her case conspired to harass her in violation of 42 U.S.C. § 1983.[2] A section 1983 conspiracy claim must allege "(1) an agreement between two or more state actors . . .; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999). "[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." Ciambriello

---

[2] In the jurisdiction section of her complaint, Fobbs also cites to 42 U.S.C. §§ 1985 and 1986. (Compl. ¶ 1). However, Fobbs does not make specific allegations under these sections or provide any support for such allegations. To the extent Fobbs intended to bring conspiracy claims under section 1985 or 1986, the Court notes that such claims require allegations of "some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action," Mian v. Donaldson, Lufkin & Jenrette Secs. Corp., 7 F.3d 1085, 1088 (2d Cir. 1993) (citation omitted), which Fobbs has not made.

v. Cty. of Nassau, 292 F.3d 307, 325 (2d Cir. 2002) (quoting Dwares v. City of New York, 985 F.2d 94, 100 (2d Cir. 1993)). Specifically, a complaint "must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." Webb v. Goord, 340 F.3d 105, 110 (2d Cir. 2003) (discussing conspiracies under 42 U.S.C. § 1985) (citation omitted).

At the outset, Fobbs's conspiracy claim fails because the Court has already dismissed all of her underlying section 1983 claims. See Singer v. Fulton Cty. Sheriff, 63 F.3d 110, 119 (2d Cir. 1995) (plaintiffs alleging a section 1983 conspiracy claims must also prove an actual violation of constitutional rights); AK Tournament Play, Inc. v. Town of Wallkill, No. 09 Civ. 10579 (LAP), 2011 WL 197216, at *3 (S.D.N.Y. Jan. 19, 2011), aff'd, 444 F. App'x 475 (2d Cir. 2011) ("[A]bsent an underlying constitutional violation on which to base a § 1983 conspiracy claim, a plaintiff's conspiracy claim fails as a matter of law.") (citing Curley v. Vill. of Suffern, 268 F.3d 65, 72 (2d Cir. 2001)).

In addition, Fobbs's conspiracy claim consists only of the conclusory allegation that "[o]fficers and prosecutors of the City of New York acted in a conspiracy to harass Fobbs" by "arrest[ing], detain[ing], arraign[ing], and prosecut[ing her] for a period of approximately three years only to fully have all charges dismissed against her due to the failure of the People to present witnesses, and their deliberate misrepresentationas [sic] as to their state of readiness on the matter." (Compl. ¶ 23). Fobbs provides no support for these speculative allegations nor does she point to any evidence in the record that might reveal the existence of an agreement to violate her constitutional rights. The mere fact that multiple people were involved in the events giving rise to Fobbs's complaint does not establish a conspiracy. Accordingly, defendants' motion for summary judgment on the section 1983 conspiracy claim is granted.

E. <u>Monell</u> Claims.

Finally, defendants move for summary judgment on Fobbs's claim that the City of New York is liable for the deprivations of her constitutional rights. A municipality may not be held liable on section 1983 claims solely "by application of the doctrine of *respondeat superior*." <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 478 (1986). Instead, in order to establish municipal liability, a plaintiff must show that: (1) "a particular municipal action *itself* violates federal law, or directs an employee to do so," <u>Bd. of Cty. Comm'rs of Bryan Cty. v. Brown</u>, 520 U.S. 397, 404 (1997) (emphasis in original), (2) an "authorized decisionmaker has intentionally deprived a plaintiff of a federally protected right," <u>id.</u> at 405, (3) unconstitutional "practices [are] so persistent and widespread as to practically have the force of law," <u>Connick v. Thompson</u>, 563 U.S. 51, 61 (2011), or (4) a municipality's failure to train its employees about their legal duty to avoid violating a citizen's rights amounts to "deliberate indifference," <u>id.</u> In any case, "a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." <u>Bryan Cty.</u>, 520 U.S. at 404.

In her complaint, Fobbs accuses the City of failing to train "its District [A]ttorneys in the management of a criminal case, and its investigators on proper investigation tactics and reporting." (Compl. ¶ 12). She also alleges that the City tolerated a custom whereby police officers arrested individuals without probable cause. (<u>Id.</u> ¶¶ 12-13). Finally, she claims that District Attorneys are municipal "policy makers" and therefore their misconduct should be imputed to the City for purposes of <u>Monell</u> liability. (<u>Id.</u> ¶ 12).

However, there can be no municipal liability where there are no underlying constitutional deprivations. <u>City of Los Angeles v. Heller</u>, 475 U.S. 796, 799 (1986). As Fobbs

has failed to demonstrate that she has suffered any constitutional injury, her Monell claims against the City of New York under section 1983 fail as a matter of law. See Segal v. City of New York, 459 F.3d 207, 219 (2d Cir. 2006) ("Because the district court properly found no underlying constitutional violation, its decision not to address the municipal defendants' liability under Monell was entirely correct.").

Accordingly, defendants' motion for summary judgment is granted as to Fobbs's Monell claims.

CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment (Dkt. 36) is GRANTED. The NYPD is dismissed as a defendant in this action and all claims against the City of New York are dismissed with prejudice. The Clerk shall enter judgment for the defendant.

SO ORDERED.

_____
P. Kevin Castel
United States District Judge

Dated: New York, New York
June 19, 2017